**TURNER et al. v. UNITED STATES.**[*]

Circuit Court of Appeals, Eighth Circuit.
October 1, 1929.

No. 8194.

[*]Rehearing denied December 19, 1929.

J. R. Weinbrenner, of St. Louis, Mo., for plaintiffs in error.

C. J. Stattler, Asst. U. S. Atty., of St. Louis, Mo. (L. H. Breuer, U. S. Atty., of Rolla, Mo., on the brief), for the United States.

Before STONE, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge. This is a writ of error to a judgment of conviction of Harry Turner and Alice Martin for placing in the United States mail nonmailable matter in violation of section 211 of the Penal Code (section 334, title 18, U. S. C. [18 USCA § 334]). The statute, so far as here material, reads as follows:

"Every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character * * * is hereby declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. Whoever shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable, * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both."

The nonmailable matter charged in the indictment was the publication known as "Much Ado," issued in St. Louis, Mo. The first count covered the issue of April, 1926, which contained an article entitled, "What Price Glory." The second count was dismissed. The third count covered an issue of the same publication October, 1926, and contained an article entitled, "Those Women of the Days of Helen of Troy Differed Little from Aimee and Her Kind."

A demurrer to the indictment by defendant Turner was overruled. A trial was had, and resulted in the conviction of both defendants on counts 1 and 3. Turner was sentenced to two years in the penitentiary at Leavenworth on each count, the same to run concurrently; and Alice Martin was sentenced to pay a fine of $500 on each count.

The specifications of error relied upon and which will be considered are, first, the overruling of the demurrer to the indictment; interposed by Turner; second, allowing the reading from the April issue of certain parts of the article specified; third, allowing the reading of certain parts of the October issue of "Much Ado" in addition to the article specified; fourth, refusal of a request to charge the jury; fifth, prejudicial remarks by the prosecuting attorney; sixth, prejudicial remark by the court.

Other specifications of error challenge the ruling denying a directed verdict at the close of the government's case. Inasmuch, however, as evidence was thereafter introduced by the defendants, objection to the ruling was waived.

The overruling of the demurrer to count 1 interposed by Turner only, is challenged in this court. This may be disregarded, as the sentence imposed upon him under this count was made to run concurrently with the sentence imposed upon him under count 3, which is not attacked; so that, even if the demurrer to count 1 should have been sustained,

the sentence under count 3 would still be valid. United States v. Trenton Potteries, 273 U. S. 392, 401, 402, 47 S. Ct. 377, 71 L. Ed. 700, 50 A. L. R. 989; Hood v. United States, 14 F.(2d) 925 (C. C. A. 8); Wenstrand v. United States, 20 F.(2d) 325 (C. C. A. 8).

As to the reading to the jury of a portion of the article from the April issue, it is sufficient to say that no objection was made at the time.

Allowing the reading to the jury of certain portions of the issue of October not included in the article particularly relied upon as obscene we think was not error. The portions read were the editor's comments on the article. These comments were specially mentioned in the indictment, and constituted the setting surrounding the article. The vital question in the case was whether the magazine was nonmailable, not merely whether a particular article or some portion of the magazine contained obscene matter. On the question of the character of the magazine itself, the whole contents were admissible. See Clark v. United States, 211 F. 916 (C. C. A. 8). For a similar reason the court's refusal to charge that the expression of opinion by Turner in the October issue should not be considered was correct. This expression of opinion was in the magazine, and was proper to be considered in determining the character of the publication.

Prejudicial remarks of counsel and the court: In the redirect examination of the defendants' witness Chesley, the following occurred:

"Q. I will ask you to examine The San Diego Herald which I handed you, as Defendants' Exhibit A, and Government's Exhibit No. 4, and ask you to compare the two articles, including the headlines on the San Diego Herald. Read them both, please.

\* \* \* \* \* \*

"Mr. Stattler: If the Court please, to save time, we will admit that article was published in the San Diego Herald.

"The Court: All right. The same article, in other words.

"Mr. Stattler: We are willing to make a further admission at this time—that is, that the editor and publisher of the San Diego Herald is under indictment for the publication of that same article in California.

"Mr. Frumberg: I object to that, and ask the Court to grant a mistrial in this case."

There is no doubt that the remark of the prosecuting attorney was highly prejudicial. It was so regarded by the court, and the jury was cautioned to disregard it. Notwithstanding the caution, the statement had the effect of getting before the jury inadmissible evidence of an irrelevant fact; namely, the indictment of the editor of the San Diego paper. The statement of counsel was not inadvertent, was not made in the heat of argument, but it was deliberate; and in our opinion it was intended by counsel in making the statement to influence the jury improperly. In all human probability it did influence the jury. There are other improper remarks of counsel for the government in the record which indicate a like purpose.

The case of Beck v. United States, 33 F. (2d) 107 (C. C. A. 8), was reversed largely because of similar misconduct on the part of government counsel. In that case the court said (page 114): "A trial in the United States court is a serious effort to ascertain the truth; atmosphere should not displace evidence; passion and prejudice are not aids in ascertaining the truth, and studied efforts to arouse them cannot be countenanced; the ascertainment of the truth, to the end that the law may be fearlessly enforced, without fear or favor, and that all men shall have a fair trial, is of greater value to society than a record for convictions."

We think the foregoing statement by this court is applicable to the present case. See, also, Nations v. United States, 32 F.(2d) 598 (C. C. A. 8).

The remark of the court which is complained of did not in our opinion constitute reversible error. The remark may have been ill-advised, but it had no wrong intent back of it, and we think could not have had any prejudicial effect upon the jury.

Because of the improper prejudicial remarks of counsel above considered, we have reached the conclusion that the judgment should be reversed.

It is so ordered.